[Cite as *Esber Beverage Co. v. Labott USA Operating Co., L.L.C.*, 2015-Ohio-4169.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ESBER BEVERAGE COMPANY, | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| LABATT USA OPERATING COMPANY, | : | Case No. 2014CA00192 |
| LLC, et al., | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court
of Common Pleas, Case No. 2009
CV 03142

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT:     October 5, 2015

APPEARANCES:

For Plaintiff-Appellee

GARY A. CORROTO
MARIA C. KLUTINOTY EDWARDS
Tzangas, Plakas & Mannos, Ltd.
220 Market Avenue South, Eighth Fl.
Canton, OH 44702

STANLEY R. RUBIN
437 Market Avenue North
Canton, OH 44702

For Defendant-Appellant
Superior Beverage Group, Ltd.

JAMES L. MESSENGER
RICHARD J. THOMAS
JERRY R. KRZYS
6 Federal Plaza Central, Suite 1300
Youngstown, OH 44503

*Baldwin, J.*

{¶1}  Appellant Superior Beverage Group, Ltd. appeals a judgment of the Stark County Common Pleas Court denying its motion to vacate the preliminary injunction in the instant case and release the bond posted by appellee Esber Beverage Company.

<u>STATEMENT OF FACTS AND CASE</u>

{¶2}  KPS Capital Partners, L.P. (KPS) is a Delaware limited partnership in the business of providing management and investment services to private equity funds. Investment funds managed by KPS own North American Breweries Holdings, LLC, which in turn owns 100% of North American Breweries, Inc. (NAB). Labatt USA Operating Co. is an indirect, wholly owned subsidiary of NAB. Doug Tomlin is regional sales director of appellant Labatt USA Operating Co.  Appellant Superior Beverage Group (Superior) is a family-owned distributor of alcoholic beverages located in Youngstown, Ohio, which distributed the Genesee brands of beer for NAB. Appellee Esber Beverage Company (Esber) is a family-owned beer and wine distribution business located in Canton, Ohio, which distributed Labatt products in certain counties in Ohio.

{¶3}  Esber has distributed the Labatt brands since the 1950's. Prior to 1995, Esber acquired the Labatt products from the Labatt Brewing Company Ltd. (LBCL), a Canadian company. In 1995, Interbrew, a Belgian brewer, purchased LBCL and acquired control of the Labatt brands. Interbrew merged with AmBev in 2004 to form InBev N.V./S.A. At the time of the 2004 merger, Labatt products were imported to the United States by an entity called Labatt USA LLC, which is not the same company as appellant Labatt USA Operating Co.

{¶4} Following the Interbrew/AmBev merger, InBev N.V./S.A. merged Labatt USA LLC with Beck's North America into a third subsidiary, Latrobe Brewing Company, and renamed the merged company InBev USA L.L.C. As of January 1, 2005, Esber acquired the Labatt brands from InBev USA (hereinafter, InBev) for distribution in Stark and surrounding counties. InBev notified Esber that it was terminating Esber's franchise pursuant to R.C. 1333.85(D) because InBev was a "successor manufacturer" within the meaning of the statute and therefore had ninety days to terminate the franchise. Esber challenged the termination and this Court ultimately concluded that InBev was not a successor manufacturer, but rather the merger that took place was "more accurately defined as a restructuring and renaming of its U.S. business operations, with no products changing ownership control." *Esber Beverage Co. v. InBev USA* LLC, Stark App. No.2006CA00113, 2007–Ohio–927, ¶ 66.

{¶5} On November 30, 2007, InBev and Esber negotiated a new distribution agreement. This agreement appointed Esber as the exclusive distributor of Labatt products in ten Ohio counties for an indefinite term. Esber had the right of first refusal "to be appointed to carry any new brands or extensions of existing Brands that are produced in Canada or are imported into the United States by Supplier [InBev] or any successor in interest ..." Distribution Agreement, § 8(a)(i-x).

{¶6} In July of 2008, InBev agreed to acquire Anheuser–Busch Companies, Inc. The United States Justice Department filed an anti-trust suit against InBev in November, 2008. To resolve the lawsuit, InBev agreed to transfer the Labatt brands to another entity with the ability to compete in the relevant markets. InBev agreed to sell the Labatt brands and related assets to a KPS affiliate. The Labatt brands were

transferred to Labatt USA Operating, a KPS affiliate formed to acquire InBev's assets related to the Labatt brands. Labatt USA Operating became a subsidiary of NAB, which also owned High Falls Operating Co., LLC, which distributed Genesee brands. Superior was the distributor of Genessee brands in the same general market where Esber distributed Labatt brands.

{¶7} Shortly after acquiring the Labatt brands, NAB invited both Esber and Superior to make a presentation regarding each distributor's ability to distribute both the Labatt and Genesee brands in the relevant market. NAB decided to use Superior to distribute both Labatt and Genesee and notified Esber of its decision to terminate Esber's distribution agreement on May 15, 2009.

{¶8} Esber filed the instant action on August 14, 2009, for declaratory judgment, injunctive relief and compensatory damages, alleging breach of contract, promissory estoppel, tortious interference with business relations, conspiracy and antitrust violations.

{¶9} On December 1, 2009, the trial court granted Esber's motion for a preliminary injunction, which allowed Esber to continue to distribute Labatt products during the pendency of the lawsuit. Esber posted a bond in the amount of $100,000.00. The trial court stated, "There are allegations that Superior will be losing approximately $35,000 to $40,000 a month in gross profit each month the transfer is delayed. As a result, it is further preliminary [sic] ordered that this order shall take effect upon the payment of $150,000 to the clerk of court as security for this preliminary injunction." Judgment Entry, December 1, 2009.

{¶10} On cross-motions of the parties for summary judgment, the trial court granted partial summary judgment to Esber, finding that the defendants were bound by the terms of the distribution agreement and that they did not have the right to terminate the agreement pursuant to R.C. 1333.85(D). The court found that R.C. 1333.85(D) did not apply because Labatt USA Operating had assumed the distribution agreement entered into between InBev and Esber and had no superseding statutory right to terminate the agreement. The court further found that even if R.C. 1333.85(D) did apply, Labatt USA Operating was not a successor manufacturer within the meaning of the statute. Judgment Entry, November 29, 2010.  The trial court issued a permanent injunction.

{¶11} In May of 2011, Esber voluntarily dismissed its remaining claims. The trial court issued a final appealable order on May 12, 2011, which incorporated the November 29, 2010 judgment.

{¶12} This Court reversed the decision of the trial court, holding that R.C. 1333.85(D) does give a successor manufacturer the right to terminate a franchise agreement within 90 days of acquiring the brand and that the statute does not differentiate between successors to manufacturers that had written franchise agreements and successors to manufacturers that had franchise agreements that had arisen by operation of law.  We therefore found that Labatt Operating was permitted by R.C. 1333.85(D) to terminate the franchise agreement as a matter of law and that the trial court should have granted summary judgment in favor of Labatt Operating. *Esber Beverage Company v. Labatt USA Operating Company, LLC,* 5th Dist. Stark Nos. 2011CA00113 and 2011CA00116, 2012-Ohio-1183.

{¶13} Esber appealed the decision to the Ohio Supreme Court. The Supreme Court affirmed our decision and remanded to the trial court for further proceedings consistent with its opinion. *Esber Beverage Company v. Labatt USA Operating Company, LLC,* 138 Ohio St.3d 71, 3 N.E.3d 1173, 2013-Ohio- 4544.

{¶14} Subsequent to the remand, the trial court increased Esber's bond from $150,000.00 to $350,000.00. Judgment Entry, July 14, 2014. Superior moved to vacate the preliminary injunction and to release the bond, requesting a hearing on damages incurred as a result of the injunction.

{¶15} In a judgment filed October 17, 2014, the trial court granted Labatt's motion for summary judgment based on the decision of the Ohio Supreme Court. The trial court found that it had not abused its discretion in issuing the preliminary injunction, and accordingly overruled Superior's motion to vacate the injunction and hold a hearing on Superior's damages claimed against the bond.

{¶16} Superior assigns the following errors on appeal:

{¶17} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY APPLYING THE WRONG LEGAL TEST WHEN IT DENIED DEFENDANT-APPELLANT, SUPERIOR BEVERAGE GROUP, LTD.'S ("SUPERIOR") MOTION TO VACATE INJUNCTION AS WRONGFULLY ISSUED AND MOTION TO RELEASE BOND ("BOND MOTION"), BECAUSE REVERSAL OF THE PERMANENT INJUNCTION IS CONCLUSIVE EVIDENCE THAT THE PRELIMINARY INJUNCTION IS WRONGFULLY ISSUED.

{¶18} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY APPLYING THE WRONG LEGAL TEST WHEN IT DENIED SUPERIOR'S BOND MOTION, FOR IF

THE REVERSAL OF A PERMANENT INJUNCTION IS NOT CONCLUSIVE EVIDENCE THAT A PRELIMINARY INJUNCTION WAS WRONGFULLY ISSUED, THEN A PRELIMINARY INJUNCTION IS WRONGFULLY ISSUED IF THE ENJOINED PARTY ALWAYS HAD A RIGHT TO DO THE ENJOINED ACT.

{¶19} "III.    THE TRIAL COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT THIS COURT'S DECISION IN *ESBER V. LABATT USA I* PRECLUDES A FINDING THAT THE DECEMBER 1, 2009 PRELIMINARY INJUNCTION WAS WRONGFULLY ISSUED.

{¶20} "IV.   THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING SUPERIOR'S BOND MOTION, BECAUSE THE LAW OF THE CASE DOCTRINE REQUIRES A CONCLUSION THAT THE PRELIMINARY INJUNCTION WAS WRONGFULLY ISSUED."

I.- IV.

{¶21} We address appellant's assignments of error together as they all raise the issue that the court's judgment overruling its motion to release the bond was incorrect as a matter of law.

{¶22} At the outset, we note that this Court did not rule in our earlier opinion that the court's judgment issuing the preliminary injunction was correct on the merits. The sole issue raised in the earlier appeal was that the court erred in granting injunctive relief because only money damages were available pursuant to the statute. In overruling this assignment of error, we did not rule that the court was correct on the merits in granting injunctive relief; rather, we ruled that injunctive relief was available under the statute. In fact, we reversed the summary judgment of the trial court, which

granted a permanent injunction to Esber, thus reversing the permanent injunction on the merits.

{¶23} Superior argues that the court erred in overruling the motion to release the bond because the court's reasons for granting the preliminary injunction were incorrect as a matter of law, as held by this Court and the Ohio Supreme Court. Esber argues that the court did not abuse its discretion in entering a preliminary injunction based on the facts and law before the court at the time the injunction was entered, and therefore the court did not err in overruling Superior's motion to release the bond.

{¶24} The bond in the instant case was posted pursuant to Ohio Civ. R. 65(C):

{¶25} "No temporary restraining order or preliminary injunction is operative until the party obtaining it gives a bond executed by sufficient surety, approved by the clerk of the court granting the order or injunction, in an amount fixed by the court or judge allowing it, to secure to the party enjoined the damages he may sustain, if it is finally decided that the order or injunction should not have been granted."

{¶26} Ohio law is somewhat unsettled as to what a party must demonstrate in order to recover on the bond. The Ohio Supreme Court has held that dissolution of an injunction is conclusive evidence that it was wrongfully issued. *Berkey Co. v. Sylvania Co.,* 97 Ohio St. 67, 119 N.E.140 (1917). However, appellate courts have distinguished *Berkey* on the basis that it was unclear as to whether *Berkey* involved the dissolution of a preliminary or permanent injunction, and the court affirming the dissolution of the injunction was silent as to the propriety of any preliminary injunction which may have been issued. See *Del-Fair, Inc. v. Seyferth,* 1st Dist. Hamilton No. C-800277, 1981 WL

9765 (June 6, 1981); *Daniel Const. Co. v. International Brotherhood of Elec. Workers,* 4th Dist. Ross Nos. 1237, 1243, 1986 WL 14075 (December 10, 1986).

{¶27} The Sixth District has held that a court in which a temporary injunction issued has discretion, upon its dissolution, to determine whether or not the injunction was properly granted. *Benrus v. Weinstein Wholesale Jewelers, Inc.,* 108 Ohio App. 525, 163 N.E.2d 406 (1959), paragraph 5 of the syllabus. Therefore, appellate districts have determined that an action upon the bond accrues only where the trial court abused its discretion in issuing the preliminary injunction, with the trial court making the first determination as to whether it wrongfully issued the injunction. *Professional Investigations & Consulting Agency, Inc. v. PICA Corp.,* 69 Ohio App. 3d 753, 761, 591 N.E.2d 1265(1990); *Daniel, supra; Del-Fair, supra.* A finding that the evidence is insufficient to support a permanent injunction does not necessarily mean the evidence was insufficient to support a preliminary injunction because more evidence is needed to support a permanent injunction. *Professional Investigations, supra,* at page 762; *Daniel, supra.*

{¶28} In contrast, the federal courts of appeals have consistently held that the reversal on appeal of an injunction triggers the wrongfully enjoined party's right to pursue recovery on the security bond. *Division No. 1, Detroit, Broth. of Locomotive Engineers v. Consolidated Rail Corporation,* 844 F.2d 1218 (6th Cir. 1988). However, Fed. Civ. R. 65 (C) includes slightly different language than its counterpart in the Ohio Civil Rules, providing that the movant give security in an amount the court considers proper to pay damages sustained by "any party found to have been wrongfully enjoined

or restrained." The Rule does not include the language found in the Ohio Rule that it be "finally decided that the order or injunction should not have been granted."

{¶29} However, in the instant case, the decision by the trial court to grant the preliminary injunction was a legal decision, not one based on a snapshot of what the evidence would show at trial concerning the permanent injunction. The merits of this case were decided on cross-motions for summary judgment by the trial court, who made the same legal determination in Esber's favor that he earlier made in granting the preliminary injunction. In considering the issue on appeal, both this Court and the Ohio Supreme Court found the trial court's decision to be erroneous as a matter of law, and rather than finding summary judgment inappropriate because of disputed facts, both courts found that the trial court erred in failing to grant summary judgment to the defendants. In affirming this Court's decision, the Ohio Supreme Court stated:

{¶30} "Accordingly, we affirm the Fifth District Court of Appeals' judgment holding that it was error for the trial court to grant summary judgment to Esber. The Fifth District found that summary judgment should have been granted to Labatt Operating as a matter of law. We agree. R.C. 1333.85(D) is clear and unambiguous on its face, and Labatt Operating followed its requirements for the termination of a franchise. This matter is remanded to the trial court for further proceedings consistent with this opinion." *Esber Beverage Co. v. Labatt USA Operating Co.*, 138 Ohio St.3d 71, 75, 2013-Ohio-4544, 3 N.E.3d 1173, 1177, ¶ 17 (2013).

{¶31} Because the decision to grant the preliminary injunction in the instant case and the subsequent determinations that the court erred in granting summary judgment on the merits, including the permanent injunction, were based solely on legal grounds,

we find that the abuse of discretion standard does not apply. Questions of statutory interpretation are questions of law, which are reviewed de novo. *Riedel v. Consol. Rail Corp.,* 125 Ohio St.3d 358, 2010-Ohio-1926, ¶6, 928 N.E.2d 448 (2010).   This is not a case where the evidence was later found by either the trial court or the court of appeals to be insufficient to support the permanent injunction.  The trial court's legal reasoning was found to be flawed based on the clear language of the statute, and the court applied the same interpretation of the statute in granting the preliminary injunction that the court would later use in determining the merits of the case.  Where the decision of the trial court on both the preliminary injunction, the permanent injunction, and the merits of the case involved the same evidence and was based strictly on statutory interpretation, the abuse of discretion standard should not apply, as the trial court did not have discretion regarding its legal interpretation of the statute.

{¶32}  The bond in the instant case was ordered to protect Superior, who would lose profits during the time LaBatt was enjoined from terminating its agreement with Esber.   The trial court's interpretation of the statute which supported its decision granting the preliminary injunction was ultimately determined by the Ohio Supreme Court to be incorrect based on the clear and unambiguous language of the statute. The trial court should therefore have granted Superior's request for a hearing, at which Superior would have the opportunity to prove damages suffered during the time period agreed upon between the parties on March 28, 2011, up to the damage amount secured by the bond.

{¶33} Appellant's assignments of error are sustained. The judgment of the Stark County Common Pleas Court is reversed and this cause is remanded to that court for further proceedings consistent with this opinion. Costs are assessed to appellee.

By: Baldwin, J.

Gwin, P.J. and

Wise, J. concur.